IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 6:17-cr-00177-MC |
| Plaintiff, | OPINION AND ORDER |
| v. | |
| LEONIDES PATRICK HERRERA, JR., | |
| Defendant. | |

Leonides Patrick Herrera entered a plea before this court to felon in possession of a firearm, reserving his right to argue that he does not qualify for a fifteen year minimum sentence under the Armed Career Criminal Act (ACCA),18 U.S.C. § 924(e). At issue is whether Hererra's six prior convictions under Or. Rev. Stat. § 164.415 for Robbery in the First Degree (Robbery I) qualify as predicate offenses under the force clause of the ACCA and, if so, whether the criminal acts that gave rise to the convictions were "committed on occasions different from one another." 18 U.S.C. § 924(e)(1). Because his six prior convictions for Robbery I are predicate offenses for purposes of the ACCA, and because the convictions constitute separate criminal episodes, Hererra is subject to the fifteen-year mandatory minimum sentence.

1—Opinion and Order

**BACKGROUND**

On February 9, 1993, Herrera entered guilty pleas in state court to six counts of Robbery I found in six separately pleaded indictments. ECF No. 31-1, Ex. 1-6. The six counts were as follows: (1) Robbery I of Lynn Morgan at the Lamplighter Motel on or about November 27, 1992; (2) Robbery I of Julie Napier at the Sunset Market on or about November 29, 1992; (3) Robbery I of Marshall Scott at a Chevron Station on or about November 27, 1992; (4) Robbery I of Bruce Read at a Plaid Pantry on or about November 29, 1992; (5) Robbery I of Kialeng Wang at the Satellite Motel on or about November 29, 1992; and (6) Robbery I of Kim Pardovick at a Best Western Motel on or about November 29, 1992. ECF No. 31-1, Ex. 1-6. Herrera acknowledged in the plea petitions that he would receive a concurrent 60-month sentence for the use or threatened use of a firearm for each count pursuant to Or. Rev. Stat. § 161.610(4)(a); i.e., Oregon's "gun minimum" statute. ECF No. 31-1, Ex. 1-6.

On July 30, 2002, Herrera entered a guilty plea in federal court to violations of 18 U.S.C. § 922(g)(1) and the ACCA. ECF No. 31-1, Ex. 8. Herrera did not contest that his six Robbery I convictions were violent felonies under the residual clause of the ACCA. ECF No. 31-1, Ex. 8. Herrera ultimately received a 188-month sentence in October of 2002.

In our present case, a federal grand jury returned a one-count indictment against Herrera on May 17, 2017. The indictment alleges that Herrera was in possession of a .22 caliber Beretta on September 16, 2016, and that he had the predicate Robbery I convictions to qualify him for an enhanced sentence under the ACCA. ECF No. 9. On April 18, 2018, Herrera pleaded guilty but reserved the right to argue, as he does now, that he does not qualify for an enhanced sentence under the ACCA. ECF No. 27.

**DISCUSSION**

The ACCA mandates a 15-year mandatory minimum sentence for one who possesses a firearm with, as relevant here, three prior "violent felony" convictions. 18 U.S.C. § 924(e). The ACCA defines "violent felony" as "any crime punishable by imprisonment for a term exceeding one year" that "(i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or (ii) is burglary, arson, or extortion, involves the use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another*[.]" 18 U.S.C. § 924(e)(2)(B) (emphasis added). The final clause, emphasized above, is the "residual clause," which *Johnson v. United States (Johnson II)*, 135 S.Ct. 2251 (2015) held unconstitutional.

Because robbery is not an enumerated offense, to qualify as a predicate offense Robbery I "must have 'as an element the use, attempted use, or threatened use of physical force against the person of another.'" *United States v. Strickland*, 860 F.3d 1224, 1226 (9th Cir. 2017) quoting 18 U.S.C. § 924(e)(2)(B)(i)). "Physical force" under § 924(e)(2)(B)(i) is "violent force—that is, force capable of causing physical pain or injury to another person." *Johnson v. United States ("Johnson I")*, 559 U.S. 133, 130 S. Ct. 1265, 176 L. Ed. 2d 1 (2010).

In determining whether a conviction involves violent force, courts look at the text of the statute and the state courts' interpretation of its terms. *Strickland*, 860 F.3d at 1226. "State cases that examine the outer contours of the conduct criminalized by the state statute are particularly important because 'we must presume that the conviction rested upon [nothing] more than the least of th[e] acts criminalized.'" *Id.* at 1226-27 (alteration in original) (quoting *Moncrieffe v. Holder*, 569 U.S. 184, 190-91 (2013)).

I. *The Categorical Analysis*

Courts utilize a three-step "categorical approach" when determining whether a state conviction qualifies as a predicate offense under the ACCA. *Taylor v. United States*, 495 U.S. 575, 600, 110 S. Ct. 2143, 109 L. Ed. 2d 607 (1990); *Descamps v. United States*, 570 U.S. 254, 257, 133 S. Ct. 2276, 186 L. Ed. 2d 438 (2013); *Mathis v. United States*, —U.S.—, 136 S. Ct. 2243, 2248 (2016). During each step, the court must "look only to the fact of the conviction and the statutory definition of the prior offense." *Taylor*, 495 U.S. at 602. More specifically, at each step the "focus [is] solely on whether the elements of the crime of conviction sufficiently match the elements of [the generic offense or the force clause], while ignoring the particular facts of the case." *Mathis*, 136 S. Ct. at 2248. The Ninth Circuit recently described this approach—where the court's ability to turn to documents such as a pre-sentence report is severely curtailed—as "counterintuitive." *See United States v. Walton*, 881 F.3d 768, 771-72 (9th Cir. 2018) ("Counterintuitive though it may seem, to determine whether a defendant's conviction under a state criminal statute qualifies as a violent felony under the force clause, we do not look to the underlying facts of the defendant's actual conviction.").

"At the first step, we compare the elements of the state offense to the elements of the generic offense defined by federal law." *Lopez-Valencia v. Lynch*, 798 F.3d 863, 867 (9th Cir. 2015). Under the categorical approach, courts do not look beyond the elements of the statute of conviction and must presume that the conviction rests upon the least of the acts criminalized. *Ramirez v. Lynch*, 810 F.3d 1127, 1131 (9th Cir. 2016). If the state offense criminalizes conduct that falls outside the elements of the federal offense, the state statute is "overbroad." *Lopez-Valencia*, 798 F.3d at 867-68. Unless the statute is divisible, a conviction under an overbroad statute will not qualify as a predicate offense. *Ramirez*, 810 F.3d at 1131.

If the court determines the statute to be overbroad, then the analysis turns to step two, which is to determine if the statute is "divisible." A statute is "divisible" if it "comprises multiple, alternative versions of the crime." *Descamps*, 570 U.S. at 262. "The critical distinction [between indivisible and divisible statutes] is that while indivisible statutes may contain multiple, alternative *means* of committing the crime, only divisible statutes contain multiple, alternative *elements* of functionally separate crimes." *Rendon v. Holder*, 764 F.3d 1077, 1084-85 (9th Cir. 2014). The key inquiry in determining a statute's divisibility is whether a jury would have to be unanimous in finding separate elements. *Ramirez*, 810 F.3d at 1134. State court decisions will typically illuminate the divisibility question. *United States v. Ankeny*, No. 3:04-cr-00005-MO, 2017 WL 722580, at *4 (D. Or. Feb. 23, 2017) ("To determine whether the elevating conditions are separate elements as opposed to separate means, I must look to Oregon state law."). If the overbroad statute is indivisible, it is not a predicate offense under the ACCA. *Lopez-Valencia*, 798 F.3d at 868.

However, if the statute is overbroad and divisible, courts proceed to step three, the "modified categorical approach." *Id*. Under the modified categorical approach, a court may look at a limited range of documents to determine what formed the basis of the defendant's conviction. *Descamps*, 570 U.S. at 277-78; *Lopez-Valencia*, 798 F. 3d at 868. Courts look to those documents to ascertain whether the defendant was convicted of a set of elements qualifying as a predicate offense under the ACCA. *Mathis*, 136 S. Ct. at 2249; *Ramirez* 810 F. 3d at 1131. The documents subject to review, i.e., the *Shepard* documents, are limited to the "terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information." *Shepard v. United States*, 544 U.S. 13, 26

(2005). The government bears the burden of introducing evidence demonstrating the defendant was convicted of a crime qualifying as a predicate offense under the ACCA. *United States v. Pallares-Galan*, 359 F.3d 1088, 1099 (9th Cir. 2004).

II. *Herrera's Robbery I convictions*

> Or. Rev. Stat. § 164.415 provides:
>
> (1) A person commits the crime of robbery in the first degree if the person violates ORS 164.394[1] and the person:
>
> > (a) Is armed with a deadly weapon;
> > (b) Uses or attempts to use a dangerous weapon; or
> > (c) Causes or attempts to cause serious physical injury to any person.
>
> (2) Robbery in the first degree is a Class A felony.

Herrera argues that his Robbery I convictions do not qualify as predicate offenses because he was convicted under either § 164.415(a) or (b), and neither categorically require sufficient violent force to qualify as an ACCA predicate offense. In the alternative, Herrera argues that it is impossible to determine from the *Shepard* documents whether he was convicted under § 164.415(a) or (b), and I therefore must assume that he was convicted under (a) because it is not a predicate offense.

I do not agree. First, I find that the *Shepard* documents from Herrera's 1993 Robbery I convictions unambiguously establish that he was convicted under § 164.415(a) and (b). Second, I conclude that a § 164.415(b) conviction in conjunction with Oregon's "gun minimum" is an ACCA predicate offense.

Under the categorical approach, I look first to the elements of Robbery I under Oregon law. Robbery I requires the actor to have committed Robbery III, along with one of three aggravating factors. *See* Or. Rev. Stat. § 164.415. As an initial matter, Robbery III requires that

---

[1] ORS § 164.394 is Oregon's robbery in the third degree.

6—Opinion and Order

the defendant "uses or threatens the immediate use of physical force against another person[.]"[2] Or. Rev. Stat. § 164.395. While the force necessary to commit Robbery III is not enough to establish predicate liability under the ACCA, Robbery I includes additional elements that arguably establish the requisite violence or threat of violence necessary to satisfy the force clause. Specifically, Robbery I can be proven alternatively by averring that the robbery was committed while the actor was armed with a deadly weapon, was using or attempting to use a dangerous weapon, or was causing or attempting to cause serious physical injury to a person.

Committing a robbery while armed with a concealed deadly weapon would support a conviction under ORS 164.415(1)(a). *See State v. Zimmerman*, 170 Or. App. 329, 333 (2000) ("The person committing [§ 164.415(1)(a)] need not actually use the deadly weapon, much less make any representations about it."). The ACCA's force clause, however, requires more than the mere possession of a concealed weapon. *United States v. Parnell*, 818 F.3d 974, 980 (9th Cir. 2016) ("There is a material difference between the presence of a weapon, which produces a *risk* of violent force, and the actual or threatened use of such force. Only the latter falls within ACCA's force clause."); *see also United States v. Van Hooser*, No. 3:96-cr-00385-JO, 2018 WL 2108287, at *3 (D. Or. May 7, 2018) (concluding Oregon Robbery I is overbroad because a robbery while possessing a concealed weapon would support a conviction).

Because Oregon Robbery I is overbroad, I must determine whether the Robbery I statute is divisible. *Mathis*, 136 S. Ct. at 2249. Judge Jones, confronted with the same question, concluded the text of Robbery I, along with Oregon's pattern criminal jury instructions and the

---

[2] At first glance, this would appear to make Robbery III a violent felony under the ACCA's force clause. *See* 18 U.S.C. § 924(e). However, the physical force contemplated by Oregon Robbery III—including the snatching of a purse where the victim does not feel a tug or pull of the purse against her arm—does not rise to the "physically violent force" necessary under the ACCA's force clause. *See Strickland*, 860 F.3d at 1227-28 (analyzing Oregon cases).

7—Opinion and Order

applicable *Shepard* documents "show Robbery I to be divisible." *Van Hooser*, 2018 WL 2108287, at *4. Judge Jones was persuaded by the same analysis that other district judges in Oregon have used in concluding Oregon Robbery II was divisible. *Id.* Judge Jones noted:

> In *United States v. Ankeny*, 2017 WL 722580 (D. Or. 2017), Judge Mosman held that Oregon's Robbery II statute was overbroad and divisible. The court looked at the statute and Oregon Supreme Court case law, specifically *Oregon v. White*, 211 P.3d 248, 250 (Or. 2009) and determined that the different sections of the Robbery II statute set out different elements that involve proof of different facts. *Ankeny*, 2017 WL 722580 *4. I find Judge Mosman's analysis to be applicable to the Robbery I statute. A defendant can be found guilty of committing Robbery I under § 164.415(a) by being armed with a deadly weapon, or (b) by using or attempting to use a dangerous weapon or (c) by causing or attempting to cause serious physical injury to a person. The facts required to prove guilt under each subsection are unique to that subsection. To prove Robbery I subsections (a) or (b) requires evidence of a weapon, a fact not necessary under subsection (c).

*Id.*

As with a conviction for Robbery II, a conviction for Robbery I requires a defendant to commit Robbery III plus at least one enhancing element. Or. Rev. Stat. § 164.415. It is, of course, possible for a defendant to transgress multiple enhancing elements during the commission of a single Robbery I episode (for example, the defendant could threaten the use of a gun during the theft by pointing it at the victim's head, thereby being both armed with a deadly weapon while at the same time using a dangerous weapon). Nonetheless, these elements must be pleaded in an indictment and must be separately presented to the jury for unanimous agreement. While the multiple verdicts that could arise under the statute are merged for purposes of sentencing under *Oregon v. White*, 346 Or. 275 (2009) (*en banc*), this does not diminish the fact that the prosecutor must prove separate sets of elements to the jury for each theory of Robbery I she wishes to prove. As Judge Jones emphasized in *Van Hooser*, an analysis of Oregon's pattern criminal jury instructions is instructive. *See Van Hooser*, 2018 WL 2108287 at *4 (noting the

pattern instructions "make clear that the Robbery I statute sets out separate elements as opposed to separate means of committing the crime.").

The appellate courts, however, have yet to confirm whether Oregon's Robbery I and Robbery II statutes are divisible. Indeed, the Ninth Circuit has found Oregon law to be less than clear on this issue, and certified the question to the Oregon Supreme Court in *United States v. Lawrence*, 905 F 3d. 653, 659 (9th Cir. 2018).

When state law fails to definitively answer the question of whether a statute is divisible, a court may "peek at the [record] documents . . . for the sole and limited purpose of determining whether [the listed items are] elements[s] of the offense.'" *Mathis*, 136 S. Ct. at 2256-67 (alterations other than ellipses in original) (quoting *Rendon*, 782 F.3d 466, 473-74) (9th Cir. 2015) (opinion dissenting from denial of reh'g *en banc*)).

In the Indictments for his six Robbery I convictions, Herrera was accused by the Grand Jury of Washington County of, "unlawfully and knowingly threaten[ing] the immediate use of physical force upon [the victim], the said defendant being armed with and using a deadly weapon, to-wit: a firearm, while in the course of committing theft of property, to-wit: money, with the intent of preventing and overcoming resistance to the said defendant's taking and retention immediately after the taking of said property." ECF No. 31-1, Ex. 1-6. The indictments charged Herrera with committing Robbery I by both possessing and using a firearm. Herrera pleaded guilty to those charges.

Herrera argues that because the Indictments were conjunctively phrased, I must assume that he pleaded guilty to the lesser of the two aggravating elements that he admitted to: i.e., merely possessing a deadly weapon. If the record were devoid of other information confirming what elements Herrera pleaded guilty to, I would tend to agree. However, Herrera's

acknowledgement in the plea petitions that he was subject to the five-year Oregon gun minimum demonstrates he pleaded guilty to § 164.415(b).

Herrera does not dispute that in his plea agreement he acknowledged that he was subject to Oregon's gun minimum. Oregon's gun minimum states:

> The use or threatened use of a firearm, whether operable or inoperable, by a defendant during the commission of a felony may be pleaded in the accusatory instrument and proved at trial as an element in aggravation of the crime as provided in this section. *When a crime is so pleaded, the aggravating nature of the crime may be indicated by adding the words "with a firearm" to the title of the offense.* The unaggravated crime shall be considered a lesser included offense.

Or. Rev. Stat. § 161.610(2) (emphasis supplied).

Herrera's indictments did not charge him merely with Robbery I. Under the Oregon statutory scheme, Robbery I would be a lesser included offense of a crime set forth in § 161.610(2). Instead, consistent with Oregon's gun minimum, Herrera was charged with "Robbery in the First Degree *with a Firearm*[.]" ECF No. 31-1, Ex. 1-6 (emphasis supplied). In his plea petition to the court, Herrera pleaded guilty to Robbery I listed in count I "w/ firearm." *Id.* Additionally, the plea petition recognized Herrera was subject to the five-year mandatory minimum "for the use or threatened use of a firearm." *Id.* Herrera's judgments confirmed he was "duly convicted of the crime(s) of robbery in the first degree with a firearm . . . in Count 1." *Id.*

By taking a "peek" at the record documents, it is clear that Herrera was charged with, and pleaded guilty to, Robbery I with a firearm: i.e., Robbery with the use or attempted use of a dangerous weapon. In other words, Herrera's plea documents support the fact that he was convicted of facts supporting both § 164.415(1)(a) (being armed with a deadly weapon) and § 164.415(1)(b) (the use or threatened use of a dangerous weapon).

Herrera argues that because Oregon's gun minimum does not require the use or threatened use of a firearm against another person, a conviction for Oregon Robbery I with the

10—Opinion and Order

gun minimum enhancement is not categorically a violent felony. I disagree. The "use or threatened use" language in Oregon's gun minimum means the discharge or threatened discharge of a firearm. *State v. Harris*, 174 Or. App. 105, 113 (2001). After a careful review of the *Shepard* documents from Herrera's 1993 convictions, I find that there is no realistic possibility that Herrera could have committed the six armed robberies he pleaded guilty to without the use, attempted use, or threatened use of violent force to another. *See Moncrieffe*, 569 U.S. at 191 ("Our focus on the minimum conduct criminalized by the state statute is not an invitation to apply legal imagination to the state offense; there must be a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime." (internal quotations omitted)).

III. *Herrera's six Robbery I convictions were committed on occasions different from one another.*

Herrera argues that his armed robbery convictions should be treated as a single prior offense. Predicate offenses under § 924(e) must be "committed on occasions different from one another." *United States v. Phillips*, 149 F.3d 1026, 1031 (9th Cir. 1998). When considering the fact of a prior conviction, the court may only look to "what crime, with what elements, the defendant was convicted of." *Mathis*, 136 S. Ct. at 2252. Once again, the court is limited to an examination of the relevant *Shepard* documents. *Shepard*, 544 U.S. at 20-21.

In the Ninth Circuit, the standard for determining whether offenses were "committed on occasions different from one another" under the ACCA focuses on the amount of time between the offenses. *Phillips*, 149 F.3d at 1031. "The rule [is that] offenses that are temporally distinct constitute separate predicate offenses, even if committed within hours of each other, [are] similar in nature, and [are] consolidated for trial or sentencing." *Id.* (first alteration in original) (quoting *United States v. Maxey*, 989 F.2d 303, 306 (9th Cir. 1993) (holding that a robbery of two

11—Opinion and Order

adjacent stores on the same night were separate criminal episodes under the ACCA). The *Phillips* court relied on the reasoning of several other circuits confronted with the task of determining whether offenses committed close in time constituted separate and distinct crimes under the ACCA. *Id.* At 1031-32 (discussing *United States v. Brady*, 988 F.2d 664, 669 (6th Cir. 1993) (*en banc*), *United States v. Pope*, 132 F.3d 684 (11th Cir. 1998), *United States v. Tisdale*, 921 F.2d 1095 (10th Cir. 1990), and *United States v. Washington*, 898 F.2d 439 (5th Cir. 1990)). In each case, "[t]he key is that after one crime is complete, the defendant has the opportunity to stop and not engage in a second criminal act." *Phillips*, 149 F.3d at 1032.

Here, two of Herrera's indictments indicate that the robberies took place on or about November 27, 1992, and the other four indicate that the robberies took place on or about November 29, 1992. Herrera argues that because under Oregon state law "on or about" is an imprecise phrase, the Court cannot be certain of the specific date that his six armed robberies took place. *See State v. Stavenjord*, 290 Or. App. 669, 673, *review denied*, 363 Or. 481 (2018) ("[t]he phrase 'on or about' means, by definition, that the date is not exact."). I agree. But even if the robberies occurred on a single night, the plea petitions confirm Herrera robbed six different victims at six different locations. In other words, Herrera had the opportunity to stop after each completed robbery, but did not. Therefore, I am satisfied that Herrera's armed robbery convictions were "committed on occasions different from one another" under § 924(e)(1). *See Phillips*, 149 F.3d at 1032 ([W]e are satisfied that Phillips' robberies [on the same evening] of two different stores involving two different victims constitute separate criminal episodes for purposes of the ACCA.").

**CONCLUSION**

Herrera's six armed robbery convictions under Or. Rev. Stat. § 164.415(b), in conjunction with Oregon's gun minimum, are "violent felonies" and serve as ACCA predicate offenses. Because the plea petitions confirm that Herrera robbed six different victims at six different locations, Herrera's Oregon Robbery I convictions were "committed on occasions different from one another," and each serves as an independent ACCA predicate offense.

IT IS SO ORDERED.

DATED this 3rd day of January, 2019.

      /s/ Michael J. McShane
Michael McShane
United States District Judge